UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

SANQUA CUMMINGS,

                    Petitioner,                Case No. 1:18-cv-1415

v.                                     Honorable Janet T. Neff

RANDEE REWERTS,

                    Respondent.

_____/

## REPORT AND RECOMMENDATION

This is a habeas corpus action brought by a state prisoner under 28 U.S.C. § 2254. Petitioner Sanqua Cummings is incarcerated with the Michigan Department of Corrections at the Carson City Correctional Facility (DRF) in Montcalm County, Michigan.

On June 6, 2016, Petitioner pleaded guilty in the Kent County Circuit Court to charges in two different case files. In case number 16-00301-FC (herein "the assault case"), Petitioner pleaded guilty to assault with intent to murder (AWIM), felon in possession of a firearm (felon-in-possession), possession of a firearm during the commission of a felony (felony-firearm) second offense, and fourth habitual offender. In case number 16-00334-FC (herein "the armed robbery case"), Petitioner pleaded guilty to AWIM, armed robbery, first-degree home invasion, felon-in-possession, felony-firearm second offense, and fourth habitual offender.

On August 11, 2016, the court sentenced Petitioner to concurrent 5-year prison terms on the felony firearm convictions. Those sentences would not begin, however, until the completion of sentences, herein "the parole sentences," for crimes for which Petitioner was on parole when he committed the various other offenses identified above. The court sentenced

Petitioner to other concurrent sentences that would begin upon completion of the five-year felony firearm sentences:  40 to 80 years on each of the AWIM convictions and the armed-robbery conviction; 17 to 68 years on the home-invasion conviction; and 4 to 20 years on each of the felon-in-possession convictions.

Just a few months later, during December of 2016, in Kent County Circuit Court case number 16-005919-FC (herein the "murder case"), a jury convicted Petitioner of first-degree murder, felony-firearm second offense, felon-in-possession, and commission of a gang-related felony.  On January 19, 2017, the court sentenced Petitioner to a 5-year prison term for felony-firearm second offense and, consecutive to that sentence, a life sentence without parole for murder, and terms of 23 to 75 years for felon-in-possession and commission of a gang-related felony.  The court ordered that those sentences were to commence upon completion of the parole sentences.  Petitioner has filed a habeas petition attacking his convictions in the murder case as well: *Cummings v. Rewerts*, No. 1:19-cv-878 (W.D. Mich.).

The consecutive string of sentences from the plea proceeding and the consecutive string of sentences from the jury proceeding will commence at the same time and be served concurrently to each other—i.e. upon completion of the parole sentences, all three felony-firearm sentences will commence, and upon completion of the felony-firearm sentences, all of the remaining sentences will commence.

On December 14, 2018, Petitioner timely filed his habeas corpus petition raising only one ground for relief:  "Did the trial court reversibly err in failing to allow Mr. Cummings to withdraw his plea prior to sentencing, when his plea of guilty was not knowingly, intelligently, and voluntarily made, in addition to Mr. Cummings asserting his innocence, confusion, and

receiving ineffective assistance of counsel." (Pet'r's Br., ECF No. 2, PageID.7.)  Respondent has

filed an answer to the petition (ECF No. 10) stating that the petition is meritless.

Upon reviewing the materials,  I recommend that the Court decline to consider the

habeas petition under the concurrent sentencing doctrine.

**Discussion**

**I.    Factual allegations**

The state court record provides almost no information about the facts underlying

the various crimes to which Petitioner entered his pleas of guilty.  At the plea hearing, Petitioner

admitted that, prior to the July 25 assault, he had been convicted of a felony and felony-firearm.

(Plea Hr'g Tr., ECF No. 11-3, PageID.100.)  Petitioner knew he was not legally permitted to have

a firearm.  (*Id*.)  Nonetheless, on July 25, 2015, he possessed a pistol and used it to try to kill Cory

Hudson.  (*Id*., PageID.100-101.)  At the sentencing hearing, the trial judge noted further that Cory

Hudson was shot in the head.  (Sentencing Hr'g Tr., ECF No. 11-4, PageID.105.)

With regard to the August 4 armed-robbery, Petitioner acknowledged that he

possessed a firearm, broke into the home of Jeffery Riley, used the firearm in an attempt to compel

Mr. Riley to give Petitioner something of value, and shot at Mr. Riley.  (Plea Hr'g Tr., ECF No.

11-3, PageID.101.)  At the sentencing hearing, the trial judge noted that Mr. Riley was shot

multiple times in the abdomen and that the bullets pierced vital organs.  (Sentencing Hr'g Tr., ECF

No. 11-4, PageID.105.)

At the plea hearing, the prosecutor described the terms of the plea agreement:  in

exchange for Petitioner's plea with regard to the assault and armed robbery cases, the prosecutor

would dismiss another case, Kent County Circuit Court case number 16-00692-FH and would not

charge Petitioner in an additional case regarding a July 25, 2015, armed robbery on Fifth Street in

Grand Rapids, Michigan.  (Plea Hr'g Tr., ECF No. 11-3, PageID.99.)  The judge then explained

3

that, when he imposed Petitioner's minimum sentences, he would "stay within the midpoint" of the guidelines, "whatever the guidelines are." (*Id.*) The prosecutor acknowledged the court's agreement to stay within the midpoint, but also noted that she would not be making a sentence recommendation to that effect. (*Id.*)

The presentence investigation report and initial guidelines calculation yielded a minimum range midpoint of 487.5 months for the most serious of Petitioner's crimes. (Sentencing Hr'g Tr., ECF No. 11-4, PageID.103-104.) According to Petitioner, that minimum sentence exceeded the midpoint his counsel had provided before the plea. Before Petitioner entered his plea, counsel provided a sentence range midpoint of 360 months. Moreover, Petitioner claimed that he was not aware that the non-felony-firearm sentences would be served consecutively to the felony-firearm sentences.

At the time scheduled for the sentencing hearing, Petitioner's counsel presented Petitioner's claims—that his maximum minimum sentence would be 30 years and that all sentences would be concurrent—along with Petitioner's claim that he was actually innocent of the charged crimes because he did not intend to kill, in support of a motion to withdraw Petitioner's plea. (*Id.*) The court rejected Petitioner's claim that he did not receive what he was promised because no numbers were discussed at the hearing. The court rejected Petitioner's claim that his counsel was ineffective because counsel's estimate was not outside the range of competence demanded of attorneys. The court rejected Petitioner's claims of innocence because the circumstances he described—carrying and using a firearm—and the injuries suffered by the victims supported inferring the necessary intent. The court did not directly address Petitioner's argument regarding concurrent versus consecutive sentencing; however, the prosecutor noted, correctly, that the court had indicated the felony-firearm sentences would be served first and the

remaining sentences thereafter, and that the information disclosed that the home-invasion sentence might be imposed consecutively to the other sentences.  (*Id*.)

        The court imposed the sentences as described above.  Petitioner, with the assistance of counsel, filed an application for leave to appeal raising one issue, the same issue he raises in his habeas petition.  (Pet'r's Appl. for Leave to Appeal, ECF No. 11-5, PageID.112.)  By order entered April 14, 2017, the Michigan Court of Appeals denied leave to appeal "for lack of merit in the grounds presented."  (Mich. Ct. App. Order, ECF No. 11-5, PageID.110.)  Petitioner then filed a *pro per* application for leave to appeal in the Michigan Supreme Court, raising the same issue he raised in the court of appeals.  (Appl. for Leave to Appeal, ECF No. 11-6, PageID.181.)  By order entered October 3, 2017, the Supreme Court denied leave to appeal.  (Mich. Order, ECF No. 11-6, PageID.178.)  Petitioner then timely filed his habeas petition.

## II.      Concurrent Sentencing Doctrine

        The "concurrent sentencing doctrine" invests the court with discretion to decline to hear a substantive challenge to a conviction when the sentence the petitioner is serving on the challenged conviction is concurrent with an equal or longer sentence on a valid conviction.  *See United States v. Hughes*, 964 F.2d 536, 541 (6th Cir. 1992); *Dale v. Haeberlin*, 878 F.2d 930, 935 n.3 (6th Cir. 1989).  The doctrine has its origins in appellate practice applicable to direct review of criminal cases.  *See Benton v. Maryland*, 395 U.S. 784, 788-91 (1969); *Hirabayashi v. United States*, 320 U.S. 81 (1943).  In these cases, the Supreme Court and the Sixth Circuit have declined to review convictions on one count where the presence of a valid concurrent count is sufficient to retain the defendant in custody.  *See, e.g., Hirabayashi*, 320 U.S. at 105; *United States v. Burkhart*, 529 F.2d 168, 169 (6th Cir. 1976).  The standard guiding the court's discretion is whether there is any possibility of an adverse "collateral consequence" if the conviction is allowed to stand.  *See Hughes*, 964 F.2d at 541; *Dale*, 878 F.2d at 935 n.3; *see also United States v. Byrd*, No. 89-6448,

1990 WL 116538, at *3 (6th Cir. Aug. 13, 1990); *United States v. Jackson*, No. 99-5889, 2000 WL 1290360, at *2 (6th Cir. Sept. 7, 2000); *United States v. Bell*, No. 95-6479, 1997 WL 63150, at *3 (6th Cir. Feb. 12, 1997).

Although the doctrine has its roots in direct appeals, the federal courts apply it in habeas corpus actions, citing the futility of reviewing a conviction that will not result in a petitioner's release from custody. *See, e.g., Cranmer v. Chapleau*, No. 95-6508, 1996 WL 465025 (6th Cir. Aug. 13, 1996); *Scott v. Louisiana*, 934 F.2d 631, 635 (5th Cir. 1991); *Williams v. Maggio*, 714 F.2d 554 (5th Cir. 1983); *VanGeldern v. Field*, 498 F.2d 400, 403 (9th Cir. 1974). The exercise of the court's discretion depends upon the degree of prejudice that may be attributed to the challenged conviction and, specifically, the effect of any adverse collateral consequence if the conviction stands. *Williams*, 714 F.2d at 555. "'[A]dverse collateral consequences' such as 'delay of eligibility for parole, a harsher sentence under a recidivist statute for any future offense, credibility impeachment, and societal stigma[,]'" may be considered. *Buffin v. United States*, 513 F. App'x 441, 448 (6th Cir. 2013). In *Pillette v. Berghuis*, 408 F. App'x 873, 886 n.8 (6th Cir. 2010), the Sixth Circuit also included "an effect on . . . a potential pardon" and "the potential for use as evidence of a prior bad act" as additional adverse consequences. *Id*.

Such remote consequences, however, "are most salient on direct appeal, not on a collateral challenge." *Buffin,* 513 F. App'x at 448. The *Buffin* court considered the list of collateral consequences stated in *United States v. DiCarlo*, 434 F.3d 447, 457 (6th Cir. 2006). The *DiCarlo* court, in turn, quoted the list from *Rutledge v. United States*, 517 U.S. 292, 301-02 (1996). The *Rutledge* Court derived the list of collateral consequences from *Benton v. Maryland*, 395 U.S. 784, 790-91 (1969), and *Sibron v. New York*, 392 U.S. 40, 54-56 (1968). *DiCarlo*, *Rutledge*, *Benton* and *Sibron* were direct appeals. Moreover, *Benton* and *Sibron* considered the existence of

6

collateral consequences because, absent such a consequence, there would have been no justiciable controversy in those cases.  The *Benton* Court noted the fact that it could conceive of collateral consequences that might give rise to a justiciable controversy and permit the court to exercise jurisdiction did not deprive the concurrent sentencing doctrine of validity as a rule of judicial convenience.  *Benton*, 395 U.S. at 791.  The *Benton* Court simply chose not to apply it in that case. *Id*. at 792.  *Rutledge* and *DiCarlo* (and the other cases cited in *DiCarlo*) are all double jeopardy cases where the existence of collateral consequences, no matter how slight, creates the multiple punishments barred by the Double Jeopardy Clause.  Such slight or remote collateral consequences should not preclude application of the concurrent sentencing doctrine when jurisdictional and double jeopardy considerations are not at issue.  If they did, the doctrine would simply disappear.

The present case is appropriate for application of the concurrent sentencing doctrine.  Petitioner is serving a life sentence without possibility of parole, and other indeterminate sentences, imposed by the Kent County Circuit Court on January 19, 2017.  Although the sentence for murder was imposed after the sentences Petitioner challenges here, it is apparent that Petitioner's sentences in the murder case and the sentences imposed in the assault and armed robbery cases all commenced at the same time, because the sentences in each case were imposed consecutively to the parole sentences.

Petitioner has not been discharged from the parole sentences, *see* Michigan Department of Corrections (MDOC) Offender Tracking Information System (OTIS),[1] https://mdocweb.state.mi.us/otis2/otis2profile.aspx?mdocNumber=853890 (visited December 22,

---

[1] This Court takes judicial notice of the information provided by a search of the MDOC Offender Tracking Information System website with regard to Petitioner.  *See, e.g., Carpenter v. Mich. Dep't of Corr. Time Computation Unit*, No. 1:13-cv-313, 2013 WL 1947249, at *1 n.1 (W.D. Mich. May 9, 2013); *Ward v. Wolfenbarger*, 323 F. Supp. 2d 818, 821-22 n.3 (E.D. Mich. 2004).

2019).  And, the MDOC has not terminated the parole sentences.  MDOC Policy Directive 03.01.135, ¶ PP (eff. 4/15/2019).  Nonetheless, as of October 24, 2019, at the latest, the parole sentences have expired.  *See Lickfeldt v. Mich. Dep't of Corr.*, 636 N.W.2d 272, 275-76 (Mich. Ct. App. 2001).  Because the parole sentences were not discharged or terminated and could not have expired before the sentences from the murder case were imposed, the sentences from the murder case and the sentences from the assault case and the armed robbery case all commenced running at the same time.

Petitioner is presently serving three concurrent five-year felony-firearm sentences and, upon expiration of those sentences, will begin serving concurrently the life sentence and all of the remaining indeterminate sentences.  Thus, even if the court were to vacate the convictions and sentences for the assault and the armed robbery cases, Petitioner would nonetheless remain incarcerated for life.

Moreover, the sorts of collateral consequences that counsel against application of the doctrine seem unlikely in Petitioner's case.  Petitioner has already brought himself to the very peak of Michigan's habitual offender sentencing scheme.  Even if Petitioner's various felonies from the assault and the armed robbery cases were overturned he would remain in the habitual-offender, fourth-offense category—the highest category under Michigan's habitual offender enhanced sentencing scheme.  Mich. Comp. Laws § 769.12.  Petitioner's significant criminal history would rob these particular offenses of any singular significance in the eyes of a subsequent parole board, jury, or pardoning authority.  Further, the stigma associated with Petitioner's criminal history is not likely to be meaningfully reduced if these convictions were removed.

If the concurrent sentencing doctrine retains any vitality—and the Supreme Court and the Sixth Circuit Court of Appeals indicate that it does—this is a case where it should be

applied.  Accordingly, I recommend that the Court exercise its discretion and decline to consider this habeas petition.

### III.    Certificate of Appealability

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted.  A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466, 467 (6th Cir. 2001) (per curiam).  Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.*  Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467.

I have recommended that the Court decline to consider the petition under the concurrent sentencing doctrine.  As this does not address the merits of Petitioner's claims, the resolution is akin to a dismissal on procedural grounds.  "When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a [certificate of appealability] should issue when the prisoner shows, at least, [1] that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and [2] that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  Both showings must be made to warrant the grant of a certificate. *Id.*

I recommend the Court find that reasonable jurists could not debate that this Court correctly exercised its discretion to dismiss Petitioner's claims under the concurrent sentencing doctrine.  "Where a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in

dismissing the petition or that the petitioner should be allowed to proceed further." *Id.*  Therefore, I recommend denying Petitioner a certificate of appealability.

Moreover, absent some showing of a significant collateral consequence in response to this report and recommendation, I recommend certifying that any issue Petitioner might raise on appeal would be frivolous.  *Coppedge v. United States*, 369 U.S. 438, 445 (1962).

### Recommended Disposition

For the foregoing reasons, I recommend that the habeas corpus petition be denied. I further recommend that a certificate of appealability be denied.  Finally, I recommend that the Court certify that an appeal would not be taken in good faith.

Dated:   January 17, 2020                              /s/ Sally J. Berens
                                                       Sally J. Berens
                                                       United States Magistrate Judge

### NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within 14 days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b).  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to file timely objections may constitute a waiver of any further right of appeal.  *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).